State ex rel. Board of Health vs. Burke.

## No. 9376.

THE STATE OF LOUISIANA EX REL. BOARD OF HEALTH VS. E. A. BURKE, TREASURER.

The provisions of Article 178 of the Constitution directing that: "The General Assembly shall * * * provide for the establishment and maintenance of a State Board of Health," do not make it the imperative duty of the legislature to thus provide by means of appropriations from the State treasury

The authority for such appropriations may be traced thereto, but it is merely permissive and not mandatory.

Hence, the warrants issued to Board of Health, under the Act 52 of 1884, are not strictly constitutional warrants, and are not entitled to preference of payment out of the General fund.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess*, J.

*F. C. Zacharie* for Relator and Appellant.

*M. J. Cunningham*, Attorney General, for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.   Relators, holders of warrants issued under the provisions of Act No. 52 of 1884, claim preference for their payment as constitu-

tional warrants, second to warrants issued in favor of constitutional officers, whose salaries are fixed by the Constitution, and concurrently with warrants issued in favor of the University of Louisiana, of the University for the education of persons of color, and of the Mechanical and Agricultural College.

They are appellants from an adverse judgment.

The theory of preference among warrants drawn against the treasury of this State, finds its sanction in the very essence of a Constitution which has limited the power of legislative taxation. While the tax limit is strictly defined, the same certainty could not be applied to the limit of appropriation. From the very nature of things, full discretion was left to the legislature, touching innumerable and unforeseen subjects of State aid, and of legislative appropriations. The very reason, which justified the propriety and the wisdom of a constitutional limitation to taxation, suggests the possibility and even the probability of an excess of appropriations, necessarily unlimited by the Constitution, over the State revenue depending upon a rate of taxation, restricted within constitutional limits.

Dealing with these principles, actually illustrated by facts and experience, and understanding that the Constitution must first be obeyed and enforced, we recognized the inevitable doctrine of a preference of a certain class of warrants over others, all issued under the same legislative provisions, in our decision in the case of the State ex rel. Collens vs. Burke, Treasurer, 32 Ann. 1213. Applying the same rule and expounding the same doctrine, we subsequently held that, as warrants in favor of constitutional officers, whose salaries are fixed by the Constitution, should hold the first rank, it followed as a logical, as well as a legal, consequence, that next to them should come other warrants issued under a direct mandate of the Constitution, and that the latter class of warrants should be allowed superiority of rank, out of the same fund, over all other warrants which cannot be traced to a like direct constitutional source. State ex rel. Administrators of the University of Louisiana vs. E. A. Burke, Treasurer, 35 Ann. 457.

The question presented in this controversy, involves the classification of relator's warrants in one of the two categories of warrants hereinabove last described.

If the Constitution has made it the imperative duty of the legislature to appropriate money from the State treasury for the purposes of the Board of Health generally or as enumerated or provided for in the appropriation for its benefit, in the Act 52 of 1884—our plain and ine-

vitable duty will be to recognize and to enforce the preference which relators claim.

Relators trace the constitutional character of their warrants to the provisions of Article 178 of the Constitution, which ordains, that " the General Assembly shall provide * * * for the establishment and maintenance of a State Board of Health."

The language of the appropriation under which relators' warrants were issued is as follows: " For the Board of Health of the State of Louisiana, to be used in " purchasing the necessary mechanical apparatus, for improving the system of disinfection of vessels, preventive of introduction of fever, and the erection of the necessary buildings and the establishment of a lower quarantine * * * for the year 1884, fifteen thousand dollars ; for the year 1885, fifteen thousand dollars."

From the mere reading of the provision, it is at once apparent that the object of the appropriation is not for the establishment and maintenance of a State Board of Health.   But the clearly avowed object of the appropriation is to increase the means or facilities for the accomplishment of certain specified ends, by an institution already established, and whose maintenance is provided for through and by means of other resources outside and independently of that particular appropriation.

It is easy to read through the language of the section, that the legislative aid intended thereby, had no reference to the constitutional recommendation contained in Article 178, but, that it was simply prompted by the laudable desire of enhancing the usefulness of the Board of Health, and that its constitutional source was understood to be found in the general and discretionary power of the legislature on the subject of taxation and appropriation.

Our conclusion is, therefore, that, conceding the language of Article 178 to be liable to the construction of an imperative mandate to the legislature to provide for the establishment and maintenance of a State Board of Health, *by appropriation of funds from the State treasury*, it is not at all apparent or even probable that the appropriation now under discussion entered into the legislative mind, as an act adopted in obedience to, or in furtherance of, such constitutional mandate, or that it had the remotest connection therewith.   And this is the essential condition of the relief which relators now crave at the hands of the courts.

State ex rel. Board of Health vs. Burke.

But a proper construction of Article 178 is absolutely inconsistent with the idea of its containing an imperative mandate to the legislature, for the maintenance of a Board of Health, by appropriations from the State Treasury.

There are many modes, both constitutional and legal, for the establishment and maintenance of State institutions besides a direct recourse to the State Treasury. Indeed, past experience and the legislation which has prevailed on this identical subject between the years 1879 and 1884 pointedly suggest other and very efficient modes to accomplish the same end.

We must take judicial cognizance of the legislation of the State, and we find that in the session of 1880, the extra session of 1881, and the session of 1882, no appropriation was made by the legislature for the Board of Health, and we are thus afforded a precedent of legislative construction of the true meaning of Article 178, and that construction is more than confirmed by the language used in the section containing the appropriation made at the session of 1884.

Of course, it never entered the mind of the Attorney General to contend or in ours even to intimate that there is no constitutional authority for the appropriation which we are now considering. It has ample constitutional and legal justification, both in the inherent powers of the General Assembly, and in the special power conferred by the article; hence it is perfectly legal and binding on the treasurer; but this does not confer the preference claimed for relators' warrants. Our meaning is simply that the authority of the General Assembly which derives from the article is permissive and not mandatory.

Of the latter character are the constitutional requirements which we were called on to consider in the cases of Collens and of the University of Louisiana.

From the foregoing considerations, naturally flows the conclusion that relators' warrants are not entitled to the preference which is claimed for them, and that relators are not entitled to the writ which they seek to obtain.

We have considered, and we duly appreciate, the very able and in-genious argument of their zealous counsel, and we are fully impressed with the great usefulness of the Board of Health, as one of the most important State functionaries, and we are free to concede that in a discussion for the adoption of a constitutional provision intended to give to their warrants the rank which is now claimed, the argument of counsel would be unanswerable and irresistible. But such is not our

mission, and our power is restricted to expound, and cannot be extended to enlarge, the Constitution.

The same consideration dictates our answer to the State Treasurer, as to his suggestion of the wisdom or necessity of an adjudication establishing, at this time, a correct classification of all warrants which are drawn against the general fund. Our authority must be confined to the issue presented in this case; and all our utterances on other rights or questions not necessarily involved in the case at hand, would be mere suggestions and idle recommendations binding on no one.

We are asked to judicially enforce an alleged preference in favor of relators' warrants; we find no constitutional ground for such a preference; in refusing the relief prayed for we have disposed of the only issue which was presented to us and we have thus exhausted our whole power in the premises.

Judgment affirmed.

Rehearing refused.